[No. 38421-3-II. Division Two. April 27, 2010.]

TIFFANY D. BLACKMON, *Respondent*, v. BRIAN J. BLACKMON, *Appellant*.

---

716

*Gary A. Preble*, for appellant.

*Meagan J. Mackenzie* (of *Northwest Justice Project*), for respondent.

¶1 QUINN-BRINTNALL, J. — On September 12, 2008, the Thurston County Superior Court granted Tiffany D. Blackmon's petition for a domestic violence protection order restraining her estranged husband, Brian Blackmon, from having contact with her and the couple's seven-year-old son for one year. Domestic Violence Prevention Act, ch. 26.50 RCW. Brian[1] filed a timely appeal, claiming that the trial court improperly denied his request for a jury trial and violated his due process rights by, among other things, improperly denying his request to present evidence after he had rested his case but before closing argument. The protection order expired September 12, 2009, and this appeal is moot.

---

[1] We refer to the parties by their first name for clarity and intend no disrespect.

¶2 Whether there exists a right to a jury trial in a protection order hearing, however, is an issue of broad public import and we, like the trial court, take this opportunity to address it. Because protection orders are essentially injunctive and involve an equitable remedy, we hold that there is no right to a jury trial in a hearing on a petition for a domestic violence protection order. We affirm.

## FACTS

¶3 On June 16, 2008, Tiffany filed a petition in Thurston County Superior Court for a protection order against Brian. Attached to the petition was a four-page listing of incidents that set out reasons Tiffany stated for fearing for her safety and for the safety of her seven-year-old son. That same day, the trial court entered a temporary protection order and notice of hearing to be held on June 27, 2008. The parties agreed to continue the hearing several times, each time extending the temporary protection order. The hearing was eventually set for September 9, 2008.

¶4 During a pretrial hearing on September 8, Brian's counsel informed the trial court for the first time that he might be requesting a jury trial. The trial court directed him to submit a brief to support such a request. On September 9, Brian's counsel filed a demand for a jury trial. There is no evidence that Brian's counsel paid the required fee, but he did file the demand in open court with a brief in support of his right to a jury trial. The trial court denied Brian's request for a jury trial and his subsequent continuance motion.

¶5 The matter proceeded to a protection order fact finding hearing, at which both parties presented opening arguments, testified on direct and cross-examination, and presented witnesses and evidence. After a full day of testimony, the parties rested. The trial court extended the temporary protection order through September 12, 2008, and recessed for final arguments and resolution of the matter on that date.

¶6 On September 11, Brian's counsel filed a motion to reopen his case to present testimony from Lori Harrison, a therapist who had conducted a parenting assessment of Brian. The assessment had a domestic violence component. On September 12, when the parties reconvened before the trial court for closing arguments and rulings, Brian's counsel orally renewed his motion to reopen. The trial court denied the motion to reopen, and the parties continued to closing arguments.

¶7 After closing arguments, the trial court reviewed the standard of proof in domestic violence matters and recounted the history of events Tiffany and Brian presented. The trial court found that there was sufficient evidence to support granting a domestic violence protection order. It issued the domestic violence protection order, restricting Brian from having contact with Tiffany for one year. The protection order also required that Brian participate in a domestic violence perpetrator treatment program as described in RCW 26.50.150. Although the protection order required supervised visitation between Brian and his son, it explicitly stated that after he was in treatment, Brian could request modification of the supervised visitation requirement. Finally, the protection order restricted Brian from possessing a firearm or ammunition, except in his capacity s military personnel carrying government-issued firearms.[2]

## ANALYSIS

MOOTNESS

¶8 Brian raises several issues in his appeal of the trial court's domestic violence protection order. But the protection order terminated on September 12, 2009, and Brian's appeal is moot.

¶9 A case is moot if a court can no longer provide effective relief. *Orwick v. City of Seattle*, 103 Wn.2d 249,

---

[2] Brian is a member of the United States Army.

253, 692 P.2d 793 (1984). We normally dismiss a case that involves only moot questions, unless that case presents issues that are of substantial and continuing interest. *In re Marriage of Horner*, 151 Wn.2d 884, 891-92, 93 P.3d 124 (2004). We consider three factors in deciding whether a case presents issues of continuing and substantial interest: (1) whether the issue is of a public or private nature, (2) whether an authoritative determination is desirable to provide future guidance of public officers, and (3) whether the issue is likely to recur. *In re Horner*, 151 Wn.2d at 891-92. Applying these factors to the issues presented here, the first, whether the parties to a domestic violence protection order have a constitutional right to demand a jury trial, is unquestionably an issue of broad public import that is likely to recur and on which an authoritative determination is desirable to provide guidance to public officers. *See In re Horner*, 151 Wn.2d at 891-92. Accordingly, we address it here.

JURY TRIAL

¶10 Brian argues that he has a constitutional right to a jury trial for domestic violence matters decided under ch. 26.50 RCW and that the trial court erred when it rejected his demand for a jury trial. We disagree.

¶11 The right to a jury trial is guaranteed by article I, section 21 of the Washington Constitution. Washington courts have consistently interpreted this constitutional provision as "guaranteeing those rights to trial by jury which existed at the time of the adoption of the constitution." *Brown v. Safeway Stores, Inc.*, 94 Wn.2d 359, 365, 617 P.2d 704 (1980); *In re Marriage of Firchau*, 88 Wn.2d 109, 114, 558 P.2d 194 (1977). "[T]here is a right to a jury trial where the civil action is purely legal in nature." *Brown*, 94 Wn.2d at 365. But there is no right to a trial by jury where the action is purely equitable in nature. *Brown*, 94 Wn.2d at 365.

¶12 To determine whether parties have a constitutional right to jury trials in Domestic Violence Prevention Act

proceedings, we must determine whether such right existed, either at common law or by territorial statute, when the Washington Constitution was adopted in 1889. *See Sofie v. Fibreboard Corp.*, 112 Wn.2d 636, 645, 648, 771 P.2d 711, 780 P.2d 260 (1989); *accord Auburn Mech., Inc. v. Lydig Constr., Inc.*, 89 Wn. App. 893, 897, 951 P.2d 311, *review denied*, 136 Wn.2d 1009 (1998). Under the common law, there is "a right to a jury trial where the civil action is purely legal in nature, but not where the action is purely equitable in nature." *Auburn Mech.*, 89 Wn. App. at 897. "The distinction between legal and equitable claims is based on the nature of the action, not the form of the action." *Auburn Mech.*, 89 Wn. App. at 899. Thus, if cases similar in nature to the modern domestic violence protection order cases were within the exclusive jurisdiction of equity courts when the state constitution was adopted in 1889, then the parties in a modern protection order proceeding do not have a constitutional right to a jury trial.

¶13 Here, Brian urges us to hold that modern domestic violence protection order proceedings are essentially criminal assault actions and, as such, are legal in nature. Although assaultive conduct may lie at the heart of a petitioner's request for a domestic violence protection order, the remedy sought, an order prohibiting contact, is not a massive curtailment of liberty amounting to incarceration and is not criminal in nature. *See, e.g., Spence v. Kaminski*, 103 Wn. App. 325, 332, 12 P.3d 1030 (2000).

¶14 The only matter at issue is whether or not to grant Tiffany and her son a domestic violence protection order limiting Brian's contact with them. As such, protective orders are essentially a type of injunction. 19 KENNETH W. WEBER, WASHINGTON PRACTICE: FAMILY AND COMMUNITY PROPERTY LAW § 26.16, at 547 (1997) (stating that temporary restraining orders and preliminary injunctions are adjuncts of the historical writ of injunction). Injunctions are equitable in nature. *Kucera v. Dep't of Transp.*, 140 Wn.2d 200, 209, 995 P.2d 63 (2000); *Tradewell Stores, Inc. v. T.B.&M., Inc.*, 7 Wn. App. 424, 427-28, 500 P.2d 1290 (1972). Thus, when a

person petitions the court solely for a domestic violence protection order, as Tiffany did here, neither she nor the party she seeks to have restrained is entitled to have a jury decide whether a judge should issue a protection order. *See Auburn Mech.*, 89 Wn. App. at 897.

¶15 The rules of evidence applicable to Domestic Violence Prevention Act proceedings further support this conclusion. ER 1101 states that the rules of evidence need not be applied in protection order proceedings. *Gourley v. Gourley*, 158 Wn.2d 460, 467, 145 P.3d 1185 (2006) (citing ER 1101(c)(4)[3]); *Hecker v. Cortinas*, 110 Wn. App. 865, 870, 43 P.3d 50 (2002) ("the rules of evidence, including the hearsay rule, need not be applied in protection order proceedings under chapter 26.50 RCW"). Consequently, competent evidence sufficient to support the trial court's decision to grant or deny a petition for a domestic violence protection order may contain hearsay or be wholly documentary. *See Gourley*, 158 Wn.2d at 467; *Hecker*, 110 Wn. App. at 870.

¶16 Moreover, in *Gourley*, our Supreme Court held that although a trial court has discretion to allow it, the Domestic Violence Prevention Act does not create a right for petitioners and respondents to subpoena or cross-examine witnesses. 158 Wn.2d at 469-70. The primary role of a jury—to observe the demeanor of these witnesses, determine witness credibility, and accord weight to witness testimony—is not essential to a legitimate decision to grant a petitioner's motion for a domestic violence protection order under RCW 26.50.060. *See Morse v. Antonellis*, 149 Wn.2d 572, 574, 70 P.3d 125 (2003) (credibility determinations are reserved solely for the trier of fact). Because the purpose of these proceedings is to provide persons who allege that they are victims of domestic violence with ready access to the protections of the court in allowing them to avoid contact with someone with whom they no longer wish

---

[3] ER 1101(c)(4) states that the rules of evidence need not apply to "[p]rotection order proceedings under RCW 7.90, 10.14, 26.50 and 74.34."

to associate, these proceedings do not include the right to compel and cross-examine witness testimony, and without such testimony there is no compelling need for a jury to determine the credibility of witnesses or determine the facts underlying the issuing court's protection order. In short, there is no right to a jury trial in a domestic violence protection order hearing because such proceeding is equitable in nature and may be properly determined by a court on documentary evidence alone. *See Auburn Mech.*, 89 Wn. App. at 897. The trial court properly denied Brian's request for a jury trial before issuing the order prohibiting him from having contact with his estranged wife and requiring supervision of his contact with his son.[4]

¶17 The remaining issues that Brian raises on appeal are both moot and unique to this case. Accordingly, we do not address them. *See In re Horner*, 151 Wn.2d at 891 (we will not review moot issues unless they are of "continuing and substantial public interest").

CONCLUSION

¶18 We review this case because it presents an issue of continuing and substantial public interest. We hold that there is no right to a jury trial in a hearing on a petition for a domestic violence protection order. Accordingly, the trial court properly denied Brian's request for a jury trial.

¶19 Affirmed.

HOUGHTON and HUNT, JJ., concur.

---

[4] We also note that Brian did not comply with CR 38(b) and waived any right he might arguably have had to demand a jury trial. But the trial court based its denial of Brian's untimely and deficient jury demand on its merits rather than on his failure to comply with CR 38(b) and so do we.